717 F.2d 1180
 13 Ed. Law Rep. 940
 Craton LIDDELL, et al., Plaintiffs/Appellees,
v.
STATE OF MISSOURI, et al., Defendants/Appellants.
Craton LIDDELL, et al., Plaintiffs/Appellees,
v.
CITY OF ST. LOUIS, Plaintiff-Intervenor/Appellant.
In re CITY OF ST. LOUIS, Paul Berra and Ronald A. Leggett,
Petitioners.
 Nos. 83-1957, 83-2118 and 83-2140.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 2, 1983.
Decided Sept. 13, 1983.
 
 Larry Marshal, Asst. Atty. Gen., Columbia, Mo., and Robert Dierker, Asst. City Counselor, City of St. Louis, St. Louis, Mo., for defendants/appellants.
 Kenneth C. Brostron, William P. Russell, St. Louis, Mo., William L. Taylor, Center for National Policy Rev., Catholic University Law School, Washington, D.C., and John Gianoulakis, St. Louis, Mo., for plaintiffs/appellees.
 Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges. EN BANC.
 
 ORDER
 
 1
 The State of Missouri and St. Louis County have filed applications for a stay pending appeal in opposition to a voluntary desegregation plan recently approved by the district court for the St. Louis area schools. The City of St. Louis has filed a petition for a writ of prohibition against the plan. Two objections are raised: (1) the plan imposes an interdistrict remedy based on intradistrict violations, and (2) the plan's provisions calling for the district court to exercise authority over school tax rates under certain contingencies conflicts with the principle of separation of powers. For the reasons discussed below, we deny the applications for the stay subject to the exceptions noted, and reserve a ruling on the petition for the writ of prohibition until we hear the appeals on the merits. We express no opinion on the merits of the serious questions raised on appeal at this stage of the proceedings.
 
 BACKGROUND
 
 2
 On July 5, 1983, the United States District Court for the Eastern District of Missouri approved a settlement plan calling for the further desegregation of St. Louis schools. 567 F.Supp. 1037. The plan had previously been approved by the Liddell plaintiffs, the Caldwell plaintiffs, the City Board of Education, and by all twenty-three suburban school districts in St. Louis County.
 
 
 3
 The plan provides for voluntary interdistrict transfers between city and suburban schools, and includes incentives to encourage these transfers. It calls for improvement in the quality of education in the city schools, and the establishment of additional magnet schools to attract suburban white students to the city schools. It requires additional special educational improvements in the all-black schools.
 
 
 4
 The plan further provides that the state will be responsible for the costs of the voluntary interdistrict transfers, the magnet schools, and various part-time and alternative integrative programs, plus one-half the cost of the programs to improve the quality of education in the city schools, and one-half the cost of the capital improvements required to carry out the plan. The state is to match equally any amount raised for capital expenditures through a voter-approved bond issue to be held prior to February 1, 1984.[1] The City Board is required to pay the remaining costs.
 
 
 5
 The plan also provides that the school tax rate reduction pursuant to state law (Proposition C) will be deferred to help fund the Board's share of implementation costs. If the city still does not have sufficient revenues to implement the plan, the plan provides that "the court will enter an appropriate order, following notice and an opportunity to be heard on the amount, to increase the property tax rate in the City of St. Louis by an amount necessary to fund the city board's share of the costs of the settlement plan."[2]
 
 
 6
 The plan is currently being implemented. School opened in several suburban districts prior to Labor Day and opened in the remaining suburban districts on September 6 and in the city schools on September 7.
 
 DISCUSSION:
 The Motion for a Stay
 
 7
 We noted the applicable standards for granting a stay pending appeal in Reserve Mining Co. v. United States, 498 F.2d 1073, 1076-1077 (8th Cir.1974). After a careful review of the record, the applications for a stay, the opposition briefs, and oral argument, we are convinced that the applications should be denied with the exceptions noted below.
 
 
 8
 The controlling factor in our judgment is the public interest. When the public interest is weighed in conjunction with the harm to the appellants and the appellees, we feel it would be improvident to grant the stay.
 
 
 9
 First, the timing of the applications suggests we not exercise our discretion in favor of issuing a stay. The settlement plan was approved by the district court on July 5, 1983. Motions for a stay were filed in district court by the state and St. Louis County on July 26 and August 8, respectively. The time has simply been inadequate to permit the thorough consideration this matter requires. We will hear the matter en banc on the merits in November. By that time, the parties will have fully briefed the matter and we will have had the opportunity to consider thoroughly the record and the briefs.
 
 
 10
 Second, the school districts have already begun to implement the voluntary plan. Issuance of a stay would necessitate reassigning students and teachers, discontinuing student transportation to county schools, and revising administrative decisions concerning budgeting, orientation, and hiring. The lives of thousands of students and teachers would be disrupted before this Court had decided the matter on the merits.
 
 
 11
 The exceptions to our denial of the stay order are as follows:
 
 
 12
 (1) Paragraph 5(e) of the district court's July 5, 1983, order provides:
 
 
 13
 (e) the State of Missouri shall pay in full the costs of transportation of the interdistrict transfer students; the reasonable, actual costs to implement incidental programs, such as the student recruitment efforts, any community involvement centers, the Voluntary Interdistrict Coordinating Council (VICC) and its staff, the Recruitment and Counselling Center and its staff and offices, and parent involvement programs; and reasonable attorney's fees that may be awarded to the prevailing plaintiffs City Board, Caldwell, and Liddell.
 
 
 14
 The provisions of paragraph 5(e) may be implemented as ordered, with the exception that the city and suburban school districts shall not further recruit or accept interdistrict transfer pupils other than those who have indicated an intention to transfer prior to the date of issuance of this order.
 
 
 15
 (2) Paragraphs 6(b) and (c) of the district court's July 5, 1983, order provide:
 
 
 16
 (b) the City Board shall submit to its voters, on or before February 1, 1984, a proposed bond issue of an amount determined by the City Board as sufficient to meet those of its capital improvement needs as are deemed necessary to meet its constitutional obligation to desegregate the City's public schools;
 
 
 17
 (c) should that bond issue fail to obtain the two-thirds majority vote required by State law, the Court will consider an appropriate order to obtain the funds deemed sufficient to meet the capital improvement needs of City Board in complying with its constitutional obligation to desegregate the City's public schools[.]
 
 
 18
 The vote on the bond issue referred to in paragraph 6(b) may proceed as scheduled. If the issue receives the required voter approval, the bonds may be issued. If it fails to receive voter approval, the district court shall defer further consideration of or action on any alternative measures to meet the capital needs of the City Board with respect to desegregation until further order of this Court.
 
 
 19
 (3) Paragraphs 6(a), (d), (e) and (f) provide as follows:
 
 
 20
 (a) the City Board shall certify to the Court, on or before July 15, 1983, the amount needed to meet its share of the reasonable actual costs of implementing programs pursuant to the Settlement Plan, as approved, as well as the tax rate necessary to fund these costs;
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 (d) the City Board is hereby authorized and directed not to reduce its operating levy in the City of St. Louis as of July 1, 1983, as otherwise required by Mo.Rev.Stat. Sec. 164.013 (Proposition C). The State shall not withhold from the City Board funds that the State would otherwise withhold pursuant to Proposition C. The amount of revenue retained by the City Board by reason of not reducing its operating levy shall be utilized to fund the implementation of programs needed to meet City Board's constitutional obligation to desegregate the City's public schools pursuant to the Settlement Plan, as approved. Any revenue retained but not necessary to fund City Board's constitutional obligation shall be applied to reduce its operating levy on July 1, 1984;
 
 
 24
 (e) in the event the above funding orders fail to provide the necessary funds, the Court will consider an appropriate order, following notice and an opportunity to be heard on the amount, to increase the City Board's property tax rate by an amount reasonably necessary to fund the City Board's share of the costs of implementing the Settlement Plan programs pursuant to City Board's constitutional obligation to desegregate the City's public schools; and(f) in its discretion, City Board may use other sources available to it to fund its share of the programs implemented pursuant to the Settlement Plan, as approved. To conform this order with the prior decree of the Eighth Circuit, Liddell [v. Bd. of Education of City of St. Louis], supra, 677 F.2d at 631, any outside funds received by City Board for the purpose of implementing these programs may first be applied to reduce the City Board's share of the costs of the programs and then applied to reduce the State's share of the costs of the programs.
 
 
 25
 The Board has hereto made the certification required by paragraph 6(a). The provisions of paragraph 6(d) may be implemented as ordered. The provisions of paragraph 6(e) may be implemented as ordered, but the district court shall not issue any order increasing the City Board's tax rate until further order of this Court. The provisions of paragraph 6(f) may be implemented as ordered.
 
 The Petition for Writ of Prohibition
 
 26
 We defer action on the writ of prohibition until such time as we consider the appeals that have been filed on the merits.
 
 
 
 [1]
 The district court's financial adviser found that an existing debt service levy of $.17, scheduled to be retired in February, 1984, could support a new $20 million bond issue amortized over twenty years without an increase in property taxes
 
 
 [2]
 The voluntary plan emerged after months of intensive negotiations, directed by court-appointed experts, and participated in by the Liddell, Caldwell, and City Board plaintiffs, and by all twenty-three St. Louis County school districts. An agreement was finally reached after the district court disclosed, in an August 6, 1982, order, the plan it would implement in the event the parties were unable to agree to a voluntary plan and the suburban school districts were found liable for constitutional violations. The district court's proposed plan essentially called for one unified metropolitan school district divided into four subregions with a uniform tax rate, and a metropolitan-wide student transfer transportation system
 The district court had originally set February 14, 1983, as the date for trial on interdistrict liability, but postponed this trial from time to time to allow the parties the opportunity to resolve their differences.